# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 08-80200-CIV-HURLEY

**RICHARD JANKUS,**
         **plaintiff,**

**vs.**

**THE EDGE INVESTORS, L.P.**
         **defendant.**
_____/


### ORDER PARTIALLY GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT & DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Richard Jankus ("Jankus") brings claim under the Interstate Land Sales Full Disclosure Act (ILSA), 15 U.S.C. §§ 1701-1720, and pendent state law claims against Defendant The Edge Investors LP ("The Edge" or "developer") alleging that The Edge failed to make required disclosures when he purchased a condominium unit. The case is now before the court upon the the parties' cross motions for summary judgment. [DE# 21, 31]

### I. Fact Background

The Edge is a developer and seller of residential condominium properties located in Florida, including The Edge West Palm Beach Condominium ("the Condominium"), a 15- story condominium building consisting of 307 units located at 300 Australian Avenue, West Palm Beach, Florida.

On July 6, 2005, Jankus signed a contract to purchase ("Purchase Agreement") a $345,000.000 condominium unit (Unit No. 206) from The Edge. Pursuant to the Agreement, Jankus has paid deposits totaling $74,400.00.

On June 27, 2007, the City of West Palm Beach issued a certificate of conditional occupancy for The Edge, certifying that the structure "is complete enough to be safely occupied ... prior to

issuance of the final certificate of occupancy." The certificate provides that it is valid for a period of 30 days, and that final certificate of occupancy must be obtained within that period, failing which occupancy may be terminated.[1] The City issued a second certificate of conditional occupancy on July 27, 2007, listing most of the same outstanding items (minus the FPL transformer issue), and issued a final certificate of occupancy on August 27, 2007.

### A. The Complaint

On February 5, 2008, Jankus filed this lawsuit seeking rescission of the Purchase Agreement, refund of his deposit monies and other damages. He claims that the Edge violated the Interstate Land Sales Full Disclosure Act (ILSA) by failing to give him the property report disclosure and notice of his related right to rescind required by 15 U.S.C. §1703(c). He also claims that the Edge violated the ILSA by using a contract form that does not contain a limitations of damage provision and notice and right to cure in accordance with 15 U. S. C. §1703(d) or a legal description of the property as required by §1703(d)(1). (Count 1).

In addition, he claims that The Edge breached the contract by failing to complete construction within two years of the contract execution date. (Count 2). Finally, he asserts that the Edge violated the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) by violating ILSA's disclosure requirements and by making certain deceptive or misleading representations regarding the price of

---

[1]The outstanding conditions specified for issuance of final certificate of occupancy included:

1. Completion of City's landscape architect punch list;
2. Eight townhouse units not released for occupancy;
3. Removal of temporary FPL transformer;
4. Installation of expansion joint cover in garage;
5. Adjustments and modification to building signage to be made as directed by inspector;
6. Labeling and listing of all domestic dryer vent transition ducts;
7. Installation of FDC connector caps as directed by Fire Marshall;
8. Satisfaction of any inspection requests on remaining open permits.

title insurance charges passed through under the contract (Count 3).

## B. The Agreement

The  Purchase Agreement contains the following provision regarding completion:

**7. <u>Completion Date; Presale Contingency</u>**.  Seller agrees to substantially complete construction of the Unit, in the manner specified in this Agreement, by a date no later than two (2) years from the date Buyer signs this Agreement, subject, however, only to delays caused by matters which are legally recognized as defenses to contract actions in the jurisdiction where the building is being erected (the "Outside Date").

Notwithstanding the foregoing or any other contrary provision of this Agreement, Seller shall have the right, in Seller's sole discretion, to cancel this Agreement and cause  Buyer's deposits to be refunded in the event that Seller does not enter into binding contracts to sell at least eight percent (80%) of the Units in the Condominium.  Seller must, however, notify Buyer of such a termination no later than one hundred eighty (180) days following the date on which the first purchaser of a Unit in the Condominium executes a binding purchase agreement for each Unit, otherwise Seller will be required  to construct  the condominium  and the Unit and otherwise proceed to perform its obligations under this Agreement.

The foregoing presale contingency is a provision  solely for  the benefit of  Seller, and may be waived unilaterally by Seller.  Accordingly, Seller may elect to proceed with the construction of the Condominium and to remain bound by the terms of this Agreement, whether or not the stated presales threshold has been met.  In the event that Seller does elect  to proceed without having met the threshold, Buyer will have no right to object thereto and shall remain bound by the terms of this Agreement.

This Section shall not delay the effectiveness of this Agreement,  which shall be immediate, but rather, shall be deemed a "condition subsequent" to this Agreement. In the event of Seller's termination of this Agreement pursuant  to this section, upon such termination and the return of Buyer's deposits, Seller and Buyer will be fully relieved and released from all obligations and liabilities under and in connection with this Agreement.  Seller agrees to use its good efforts to meet the foregoing pre-sale requirement and such requirement  shall not operate to extend the two (2) year completion obligation set forth above.

Purchase Agreement ¶7. [DE# 10-3]

In turn, "substantial completion" is defined under the Agreement as follows:

**33. <u>Substantial Completion</u>**.  Whenever this Agreement requires Seller to complete or substantially complete an item of construction, that term will be understood to be complete or substantially complete when so complete or substantially complete in Seller's opinion.  Notwithstanding the  foregoing, however, neither the Unit nor the

building of which the Unit is a part will be considered complete or substantially complete for purposes of this Agreement unless the Unit (and such portion of the building intended to be used exclusively by Buyer) is physically habitable and usable for the purpose for which the Unit was purchased. The Unit (and such portion of the Building) will be considered so useable if the Unit is ready for occupancy and has all necessary and customary utilities extended to it. Other units (and other portions of the building) may not necessarily be so complete and usable.

Purchase Agreement ¶33.

## II. DISCUSSION

### A. Interstate Land Sales Full Disclosure Act (ILSA) Claim

The Interstate Land Sales Disclosure Act is a consumer protection statute "utilizing disclosure as its primary tool" to "protect purchasers from unscrupulous sales of undeveloped home sites." *Winter v Hollingsworth Properties, Inc.*, 777 F.2d 1444, 1447- 48 (11th Cir. 1985). *McCown v Heidler*, 527 F.2d 204, 207 (10th Cir. 1975). As a strict liability statute enacted for the purpose of protecting the public, the ILSA should be liberally construed in favor of the public. *200 East Partners LLC v Gold*, 997 So.2d 466 (Fla. 4th DCA 2008).

### 1. General Disclosure Requirements

To protect consumers from fraudulent land sales, ILSA requires developers to inform buyers, prior to purchase of subdivision lots, of facts which would enable a reasonably prudent individual to make an informed decision about purchasing the property. *Pacquin v Four Seasons of Tenn., Inc.*, 519 F.2d 1105, 1109 (5th Cir. 1975). Thus, before selling or leasing any lot not exempt under § 1702[2], a developer or agent engaged in interstate land sales must first (1) file a "statement of record" with the Department of Housing and Urban Development ("HUD") pursuant to 15 U.S.C.

---

[2]   The term "lot" is interpreted to generally refer to interests in realty, including condominiums. *Winters v Hollingsworth Properties, Inc.,* 777 F.2d 1444 (11th Cir. 1985).

Section 1702 (b) exempts the sale or lease of lots in sub-divisions containing less than 100 lots from the registration and disclosure requirements of ILSA. The parties agree that the contract here involves a lot in a sub-division containing more than 100 lots and that the 100 lot exemption is not applicable.

§1704,[3] and (2) provide a "property report" to the purchaser before he or she signs any contract or agreement pursuant to 15 U.S.C. § 1703(a)(1). [4]

It is unlawful under the ILSA to sell or lease any lot without providing the required property report, or to supply a statement of record or property report which contains untrue statements of material fact or omits certain material facts required by other provisions of the Act, 15 U.S.C. §1703(a)(1)(C), or to display or deliver advertising and promotional material which is inconsistent with the information in the property report. 15 U.S.C. § 1703(a)(1)(A)(D).

ILSA also requires the developer to provide the buyer with a specific description of the lot being purchased and to inform him of the consequence and remedies of default by either the buyer or the seller, failing which the contract becomes revocable at the option of the purchaser for a period of two years after signing. 15 U.S.C. §1703(d). [5]

Also, where the required property report is not furnished to the purchaser before signing of

---

[3] The statement must contain numerous disclosures, including the identification of interested persons, a legal description of the entire property, the condition of title, the price of the lots being sold and a description of access, nuisances, utilities, and consequences of any encumbrances and liens. 15 U.S.C. § 1705.

[4] The property report "is an extensive disclosure that must include such information such as identification of interested persons; legal description of the subdivision; statement of the condition of title to the land; statement of general terms and conditions (including the range of selling prices); statement of the present condition of access to the subdivision; existence of unusual conditions relating to noise or safety, availability of sewage disposal and other public utilities, proximity to nearby municipalities, and the nature and completion schedule for proposed improvements; statements relating to any blanket encumbrances; and such other information as the Secretary of HUD might require as reasonably necessary or appropriate for protection of purchasers. *Pigott v Sanibel Development, LLC*, 576 F. Supp. 2d 1258 (S.D. Ala. 2008), citing 15 U. S. C. § 1705, 1707.

[5] 15 U.S.C. §1703(d) of ILSA provides:

Any contract or agreement which is for the sale or lease of a lot not exempt under section 1702 of this title and which does not provide-- [certain safeguards within the terms of the contract] --may be revoked at the option of the purchaser or lessee for two years from the date of the signing of such contract or agreement....

5

the contract, the Act gives the purchaser the right to revoke the contract within two years of signing. 15 U.S.C. 1703(c).[6]   The Act also requires the developer to provide clear notice of this right in the contract.  When a purchaser revokes under §1703(c), the purchaser is entitled to "all money paid by him or her under such contract or agreement." 15 U.S.C. §1703(e).

The Department of Housing and Urban Development, which promulgates regulations that implement and clarify the provisions of the ILSA, limits a seller's ability to restrict a buyer's revocation rights.  Thus, under associated HUD regulations, a seller must notify a purchaser that the purchaser may "cancel by personal notice, or in writing." 24 C. F. R. §1710.118(a).  Further, "revocations provisions may not be limited or qualified in the contract or other document by requiring a specific type of notice or by requiring that notice by given at a specified place." 24 C. F.R. § 1710.209(f)(3)(iii).  Additionally, the regulations require the developer to include the following language in bold typeface on the face or signature page of the sales agreement:

> If you did not receive a Property Report prepared pursuant to the rules and regulations of the Office of Interstate Land Sales Registration, U.S. Department of Housing and Urban Development, in advance of your signing the contract or agreement, the contract or agreement of sale may be cancelled at your option for two years from the date of signing.

24 C. F .R. §1710.209(f)(3)(i).

## 2. Exemptions

There are several exceptions to the seller's ILSA disclosure requirements.  *See generally* 15

---

[6]15 U. S. C. § 1703 (c) of ILSA provides:

In the case of any contract or agreement for the sale or lease of a lot for which a property report is required by this chapter and the property the report has not been given to the purchaser or lessee in advance of his or her signing such contract or agreement, such contract or agreement may be revoked at the option of the purchaser or lessee within two years from the date of such signing, **and such contract or agreement shall clearly provide this right**.

[emphasis supplied]

U.S.C. §1702.  Section 1702(a)(2), the primary exemption at issue here, provides:

§1702. Exemptions

(a) Sale or lease of lots generally.  Unless the method of disposition is adopted for the purpose of evasion of this title, the provisions of this title shall not apply to -
....
(2) the sale or lease of any improved  land on which there is a residential, commercial, condominium or industrial building, or the sale or lease of land under a contract obligating the seller or lessor to erect such a building thereon within a period of two years.

### 3.  Application

In this case, the Edge agrees that it did not provide  Jankus with a property report that met the requirements of §1707, and did not  include notice of the buyer's right of statutory  rescission attendant to this omission in  the Agreement pursuant to  § 1703(c).  According to The Edge, it was not required to do either because the sale of the condominium was exempt from the provisions of the ILSA.  In addition and alternatively, it asserts that Jankus' failure to invoke  rescission  within the two year time frame prescribed by  § 1703(c)  renders his  ILSA  rescission claim untimely.

It is also uncontested  that Jankus did not seek to revoke the Purchase Agreement until he filed this lawsuit on February 5, 2008  – approximately two years and seven months after he signed the Agreement.

### a.  Timeliness of Complaint

In accord with  *Taylor v Holiday Isle, LLC*, 561 F. Supp. 2d 1269, 1273 (S.D. Ala. 2008), this court previously held that a  rescission claim  under §1703 (c)  requires compliance with *both* § 1703(c)'s two year window  for invoking the buyer's right of rescission  *and* § 1711(b)'s three year statute of limitations  for filing suit based on a  seller's refusal to honor the rescission demand – regardless of whether the contract contains the statutorily prescribed  notice of the buyer's right to rescission.  *Ditthardt v  North Ocean Condos, L.P.*, 580 F. Supp. 2d 1288 (S.D. Fla. 2008)(Hurley,

7

J.); *Hausy v North Ocean Condos*, LP, Case NO. 08-60057-CIV-HURLEY (order partially granting motion to dismiss).  *See also Meitis v Park Square Enterprises, Inc*., 2008 WL 5351619 (M.D. Fla. 2008)(same).

The *Holiday Isle* court reached this result as a matter of simple statutory construction, noting that nothing in the ILSA states that failure to disclose the right to rescind in the purchase agreement obviates, tolls or extends the buyer's two-year deadline invoking rescission, and nothing in the statute says that the two year window for invoking rescission under § 1703(c) runs from the date that the purchaser discovered or should have discovered that he had a right to rescind.  *Holiday Isle* at 1274-75.

While it acknowledged the theoretical application of equitable tolling principles, citing *Arce v Garcia*, 434 F.3d 1254 (11th Cir. 2006), the *Holiday Isle* court concluded that there were no extraordinary circumstances present to justify its invocation in the case before it, where the developer's non-disclosure was the extent of the developer's inequitable conduct.  It also acknowledged the contrary force of *Engle Homes v Krasna*, 766 So.2d 311 (Fla. 4th DCA 2000), where a mid-appellate Florida state court held that a buyer who did not receive notice of his revocation rights under § 1703(b)[7] was not barred from seeking rescission under the corresponding two year statutory rescission period, rejecting *Krasna* as "problematic" because it was contrary to established law eschewing ignorance as a defense to a statute of limitations bar.

Finally, the Alabama district court in *Holiday Isle* rejected the idea that enforcement of the statutory private two year rescission period despite the seller's nondisclosure would effectively

---

[7]  Section 1703(b) prescribes a seven day "cooling off" period, allowing the buyer an unfettered right of rescission for up to seven days after signing the contract for sale.  Like 1703(c), Section 1703(b) requires the developer to include clear written notice of this right as a term of the contract.

render the seller's notice obligation meaningless, theorizing that the ILSA provides other remedies for such violation, such as a damages claim under § 1709(b).

Upon careful reconsideration, the court rejects the *Holiday Isle* approach, and, at the same time, recedes from its own analysis and comparable holding in *Ditthardt, supra*. The primary analytical error underlying both cases revolves around the erroneous equation of the two year statutory private rescission period prescribed at §1703(c) with a statute of limitations bar.

The two year rescission window created by §1703(c) does not, by its terms, prescribe the date *by which suit must be filed,* and hence is not, by its terms, a statute of limitations. A statute of limitation operates, with the lapse of time, to extinguish the right which is the foundation for the claim, and typically provides that a cause of action may or must be filed within a certain period of time. *Beach v Ocwen Federal Bank*, 523 U.S. 410, 416 118 S. Ct. 1408, 140 L. Ed.2d 566 (1998). The preliminary rescission notice requirement described at § 1703(c) does not fall into this category; rather, it is more accurately characterized as a condition precedent to suit that may be waived by the seller.

Hence, equitable tolling principles which generally attend the application of federal statutes of limitations,[8] and the general rule guiding selection of competing statutes of limitation referenced

---

[8] *Ellis v General Motors Acceptance Corporation*, 160 F.3d 703 (11th Cir. 1998)(following general rule that equitable tolling applies to all federal statutes unless the statute states otherwise), *citing Holmberg*, 327 U.S. at 394-95; 66 S. Ct. 582. For example, in the Truth-in- Lending-Act (TILA) context, most courts, following *Burnett v New York Central R.R. Co.*, 380 U.S. 424 (1965) conclude that the one year statute of limitation on rescission set out at §1640(3) is subject to equitable tolling. *Ellis v General Motors Acceptance Corporation*, 160 F.3d 703 (11th Cir. 1998); *Ramadan v Chase Manhattan Corp*. 156 F.3d 499 (3d Cir. 1998); *Jones v TransOhio Savings Ass'n,* 747 F.2d 1037, 1041 (6th Cri. 1984); *King v California*, 784 F.2d 910, 914-15 (9th Cir. 1986).

To make out a case for equitable tolling of a statutory limitations period, the claimant must show (1) fraudulent concealment by the party invoking the statutory bar, and (2) the claimant's failure to discover the facts which are the basis of his cause of action despite (3) the exercise of due diligence on his part. *See e.g. Bokros v Associatse Finance, Inc*. 607 F. Supp. 869 (N. D Ill. 1984); *Logan v McCarthy's Oldsmobile GMC Trucks, Inc*., 1998 WL 34072617 (D. Minn. 1998),

in *Ditthardt, supra* at 1292, citing e.g. *Marseilles Hydro Power, LLC v Marseilles Land and Water Co.*, 518 F.3d 459, 468 (7th Cir. 2008)(where two statutes of limiations have possible application, the specific governs over the general) have no play here.  Similarly, the  notion that  ignorance of the law does not avoid a statute of limitations bar – however true as a general proposition – is irrelevant because the two year statutory rescission period prescribed at §1703(c) is not in the nature of a statute of limitations.

Moreover,  that the plaintiff may have a theoretical  action for damages under §1709(b) is not a meaningful alternative where he or she is still bound to perform under the contract of purchase. Without  the legislatively  prescribed rescission remedy under § 1703(c),  he or she is left with the difficult  task of proving the materiality of the  property report disclosure violation and causally related damages under § 1709(b).  The corresponding diminished  litigation exposure attendant to this revision of the statutory scheme would give developers little incentive to comply with the disclosure requirements mandated under  the ILSA.  This court is not willing to interfere with the ILSA statutory scheme in this fashion by effectively writing the rescission disclosure requirement out of the statute, essentially what the *Holiday Isle* court achieved by enforcing §1703(c)'s  two year rescission period against a buyer who did not  receive the statutorily  prescribed notice of it.

This is not a technical violation warranting damages only because it goes to the heart of the disclosure requirements under ILSA – first to arm consumers with relevant knowledge prior to

---

citing *Jones v Saxon Mortgage Inc.* 980 F. Supp 842 (E.D Va. 1997); *Kicken v Valentine Production Credit Ass'n,* 628 F. Supp. 1008, 1011 (D. Neb.),   *aff'd* , 754 F.2d 378 (8th Cir. 1984); *Hughes v Cardinal Federal Savings & Loan Ass'n,* 566 F. Supp. 834, 838 (S. D. Ohio 1983).

As applied in the TILA context, most district courts applying equitable tolling precepts  have required something more than  mere nondisclosure, or inaccurate financial disclosures, to justify an equitable tolling of the statute of limitations – i.e. evidence of some affirmative deception or course of conduct designed to conceal the  underlying wrongdoing.  *See e.g. Williams v Saxon Mortgage Services, Inc.*, 2007 WL 2828752 (S.D. Ala. 2007) *5,  f. n. 9 and cases cited *infra.*

10

signing a purchase agreement for undeveloped property, and second to provide for a right of rescission where that information is not supplied. A developer's failure to give the required notice of the right of rescission in this context automatically violates the Act in a manner which frustrates the Act's express purpose, leaving the consumer committed to a land purchase made without the benefit of the advance, detailed information required by the statutorily mandated property report.[9]

Accordingly, this court now holds that a developer's failure to give the statutorily mandated notice of rescission rights under §1703(c) extends the buyer's rescission period until two years after the disclosure is correctly made. Failure to infer an extension of the rescission period under these circumstances would thwart the purposes of the statute by leaving buyers without a meaningful remedy to redress the injury caused by the developer's failure to discharge its statutory duty.

Where, as here, the required property report disclosures is never made, the buyer's rescission period runs the full length of the three year statute of limitations prescribed at 15 U.S..C. §1711(b). This result does not render the two year rescission window prescribed at §1703(c) meaningless – it remains very meaningful to those developers who choose to comply with the ISLA's rescission disclosure requirements. Those who do not effectively waive the statutory requirement that a buyer give notice of his intent to revoke or rescind as condition precedent to filing suit for rescission. *Cf. Pacific Insurance v New Park Towers Condominium*, 2008 WL 187537 (S.D. Fla. 2006)(insurer's waiver of right to proceed to appraisal as condition precedent).

Based on the uncontroverted facts in this case, Jankus retained the right to rescind his purchase agreement. [10] Moreover, by filing his judicial complaint within the three year statute of

---

[9] The wording of the associated regulation makes clear that failure to give notice of the right of rescission is a violation of the ILSA. 24 C. F. R.§ 1710.209(3)(3)(i)("The contracts or agreements ... *must* contain the following language in boldface type...")

[10] In the Truth-in-Lending Act ( TILA) context, a consumer has a 3-day right of rescission where the seller fails to make required disclosures in consumer credit transactions involving

limitations period prescribed by §1711(b), Jankus satisfies the pertinent federal regulation requiring

that the buyer exercising his rescission right notify the developer of his intent to cancel "by personal

notice, or in writing."  24 C. F. R. §1710.118(a).  *See e.g. Taylor v Domestic Remodeling, Inc*., 97

F.3d  96 (5th Cir. 1996)(filing of complaint constitutes statutory notice of rescission pursuant to 12

C.F.R. §226.23 (a)(3)), *citing Elliott v ITT Corp*., 764 F. Supp. 102, 105-06 (N.D. Ill. 1991).

### b.   Exemption under Two Year Construction Obligation

The Edge alternatively asserts that Jankus was not entitled to a property report meeting the

requirements of §1707  because the Agreement  was exempt from the ILSA under §1702(a)(2).

Under  15   U.S.C.  §1702(a)(2), the sale of a condominium is exempt from the ILSA

disclosure requirements if the sale is "under a contract obligating the seller ... to erect [ a

condominium] thereon within a period of two years."

The Edge argues that such an obligation is found in paragraph 7 of the Purchase Agreement

which provides:

---

retention of a security interest in residential property. 15 U.S.C. §1635(a).  By the express terms of
the statute and associated regulations,  a seller's failure to give the prescribed notice of this
rescission right extends the rescission  period until three days after the disclosures are correctly
made. 15 U.S.C. §1635(f); 12 C.F.R. §226.23(a)(3).  If this particular TILA disclosure is never
made, the  buyer is thus entitled to the benefit of the full three year statute of limitations in which
to rescind, regardless of the materiality of the nondisclosure. See *Williamson v Lafferty,* 698 F.2d
767 (5th Cir. 1983)(borrower retained right to rescind credit transaction  for three years where seller
failure to fill in expiration  date on rescission form)*. See also McKenna v First Horizon Home Loan
Corp.,* 475 F.3d 418 (1st Cir. 2007); *Smith v Highland Bank*, 108 F.3d 1325 (11th Cir. 1997); *Taylor
v Domestic Remodeling, Inc*.,97 F.3d 96 (5th Cir. 1996)(erroneous statement of date on which right
to  rescind home improvement contract would expire, coupled with contractor's premature
performance entitled  consumer to extended  three year rescission rights). *Harris v OSI Financial
Services, Inc*., ___ F. Supp. 2d _____, 2009 WL 212138 (N.D. Ill. 2009).

Unlike the TILA,  the ILSA and its associated regulations do not  expressly provide for an extended
period of rescission where the developer fails  to give the statutorily  prescribed notice of rescission.
However, for reasons discussed *supra*, this does not reasonably lend to the inference that the
legislature intended complying and noncomplying sellers  alike to enjoy insulation from  rescission
claims after expiration of the two year rescission period.

Seller agrees to substantially complete construction of the Unit . . . by a date no later than two years from the date buyer signs this agreement, subject, however, only to delays caused by matters which are legally recognized as defenses to contract actions in the jurisdiction where the building is being erected ("the Outside Date")...

The Department of Housing and Urban Development ("HUD") has provided guidelines for exemptions available under ILSA.  Guidelines for Exemptions Available Under the Interstate Land Sales Full Disclosure Act, 61 Fed. Reg. 13596, 13603 (Mar. 27, 1996) ["ILSA Guidelines"].  In particular, HUD has provided some guidance on what constitutes an obligation to construct within the meaning of this exemption, indicating as a basic proposition that the "contract must not allow nonperformance by the seller at the seller's discretion," because such an obligation is "not an obligation in reality."  ILSA Guidelines, 61 Fed. Reg. 13596, 13603.

While the ILSA Guidelines are to be given great deference, the circumstances under which a contract "obliges" a seller to erect a building within two years is ultimately a question of state contract law. *Markowitz v Northeast Land Co.* 906 F.2d 100, 105 (3d Cir. 1990); ILSA Guidelines, 61 Fed. Reg. At 13603.  On this point, the Florida Supreme Court has indicated in *dicta* that a contract "obligates" the completion of a condominium within two years when the contract "unconditionally obligates" the developer to complete construction within two years, *and* "does not limit the purchaser's remedies of specific performance or damages." *Samara Development Corp. v Marlow*, 556 So.2d 1097, 1099-1100 (Fla. 1990)(holding that contract which limited purchaser's remedy to recovery of deposit or specific performance upon default by developer created illusory obligation to complete construction within two years, such that ILSA governed sale).

However, most federal district courts have not taken the "unconditionally obligate" language of *Samara* literally. *Van Hook v The Residences at Coconut Point LLC*, 2008 WL 2740331 *3 (M.D Fla. 2008).  Rather, the general sense is that to "obligate" the timely completion of construction does not require a completely unconditional commitment, but does require a non-illusory commitment.

13

Accordingly, courts will generally examine the condition(s) in question to determine whether the developer's apparent obligation to construct within two years is real or is rendered illusory by the condition(s). *See e.g. Stein v Paradigm Mirsol*, LLC, 551 F. Supp.2d 1323, (M.D.. Fla. 2008).

This approach is patterned after the prescriptions set forth in ILSA Guidelines which state:

> Contract provisions which allow for nonperformance or for delays of construction completion beyond the two year period are acceptable if such provision are legally recognized as defenses to contract actions in the jurisdiction where the building is being erected. For example, provisions to allow time extensions for events or occurrences such as acts of God, casualty losses or material shortages are generally permissible.
> ....
>
> Although the factual circumstances upon which nonperformance or a delay in performance is based may vary from transaction to transaction, as a general rule delay or nonperformance must be based on grounds cognizable in contract law such as impossibility or frustration and on events which are beyond the seller's reasonable control.

61 Fed. Reg. 13596, 13603 (Mar. 27, 1996).

However, there is some division between the district courts as to what types of conditions a developer may place on its obligation to build within two years and still qualify for the exemption. Judge Steele in the Middle District has consistently taken the position that the only condition a developer may place on its obligation of two year completion is one which strictly qualifies as a defense under Florida's impossibility of performance doctrine, [11]   *see Stein v*

---

[11]   Impossibility of performance under Florida law refers to those factual situations where the purposes for which a contract was made have, on one side, have become impossible to perform. *Crown Ice Machine Leasing Co v Sam Senter Farms, Inc*., 174 So.2d 614 (Fla. App. 2d DCA 1965). Impossibility of performance is employed with great caution under Florida law. If knowledge of the facts making performance impossible was available to the promisor or was foreseeable, the promisor cannot invoke them as a defense to nonperformance. *American Aviation, Inc v Aero Flight Serv, Inc*., 712 So.2d 809 (Fla. 4th DCA 1998); *See e.g. Harvey v Lake Buena Vista Resort, LLC* , 2009 WL Cook v Deltona Corp., 753 F.2d 1552, 1558 (11th Cir. 1985).

For example, acts of God - wholly unpredictable events -justify invocation of "impossibility of performance" doctrine. *Florida Power Corp v City of Tallahassee*, 154 Fla. 638, 18 So.2d 671 (1944)(An act of God, such as well excuse nonperformance of a legal contract, must be an act or occurrence so extraordinary and unprecedented that human foresight could not foresee or guard

*Paradigm Mirsol, LLC*, 551 F. Supp.2d 1323 (M. D. Fla. 2008); *Van Hook  v The Residences at Coconut Point, LLC*, 2008 WL 2740331 (M.D. Fla. 2008); *Disimone v LDG South II, LLC*,  2009 WL 210711 (M.D. Fla. 2009) , while other  courts in this District  have more liberally allowed  the inclusion of  *force majeure* clauses -- encompassing   both foreseeable and unforeseeable contingencies  beyond the seller's control --as excuses to timely performance, theorizing that  such clauses constitute   legally recognized  defenses in Florida  and do not impermissibly expand the concept  of "impossibility" so as to render the defendant's obligation to complete construction illusory.  *See e.g. Stefan v Singer Island Condominiums Ltd.*, 2009 WL 426291 (S.D. Fla. 2009) (J. Marra); *Caswell v Antilles Vero Beach, LLC*, 2008 4279555 (S.D. Fla. 2008)(J. Middlebrooks); *Gentry v Harborage Cottages-Stuart, LLLP*, ___ F. Supp.2d ____, 2009 WL 689714 (S.D. Fla. 2009)(J. Moore).

This court is best persuaded  by the reasoning set forth in the trilogy of  Judge Steele's opinions addressing the point,[12] but ultimately finds it unnecessary to resolve  the issue here  because it finds other  language in the Agreement   rendering  the developer's obligation  to complete construction  wholly illusory, thereby nullifying  the exemption.

---

against it, and the effect of which could not be prevented or avoided by the exercise of reasonable prudence, diligent and care or by the use of those means which the situation fo the party renders it reasonable that her should employ.").  *See e.g Stein v Paradigm*, supra at *8 ("delay for acts of God has a well established and limited definition that does not render the Agreement illusory").

[12] Judge Steele's opinions are consistent with  a recent  unpublished opinion of the Eleventh Circuit Court of Appeals,  *Kamel v Kenco/The Oaks at Boca Raton LP*, 2008 WL 4601715 (11th Cir. Oct 16, 2008), where the court upheld application of the exemption to  a contract containing a force majeure clause requiring substantial completion of construction  within two years subject to "delays caused by buyer, or acts of God, unavailability of materials, strikes, other labor problems, governmental orders, or other events which would support a defense based upon impossibility," finding that the inclusion of the final clause "or other events which would support a defense based upon impossibility of performance" modified the entire string of events which preceded it.
  In other words, the court qualified each  enumerated strand or  excuse for delay under the specific  force majeure clause at issue  to require satisfaction of Florida's  "impossibility" standard (and hence to require an element of unforseeability).

Under the HUD Guidelines, "contracts that directly or indirectly waive the buyer's right to specific performance are treated as lacking a realistic obligation to construct." 61 Fed. Reg. at 13603. In this case, such a waiver is accomplished by language contained in ¶ 7 of the Agreement which immediately follows and qualifies the seller's obligation to achieve substantial completion within two years.

Paragraph ¶ 7 of the Agreement thus provides:

**7. Completion Date; Presale Contingency**. Seller agrees to substantially complete construction of the Unit, in the manner specified in this Agreement, by a date no later than two (2) years from the date Buyer signs this Agreement, subject, however, only to delays caused by matters which are legally recognized as defenses to contract actions in the jurisdiction where the building is being erected (the "Outside Date").

Notwithstanding the foregoing or any other contrary provision of this Agreement, Seller shall have the right, in Seller's sole discretion, to cancel this Agreement and cause Buyer's deposits to be refunded in the event that Seller does not enter into binding contracts to sell at least eight percent (80%) of the Units in the Condominium. Seller must, however, notify Buyer of such a termination no later than one hundred eighty (180) days following the date on which the first purchaser of a Unit in the Condominium executes a binding purchase agreement for each Unit, otherwise Seller will be required to construct the condominium and the Unit and otherwise proceed to perform its obligations under this Agreement.

The foregoing presale contingency is a provision solely for the benefit of Seller, and may be waived unilaterally by Seller. Accordingly, Seller may elect to proceed with the construction of the Condominium and to remain bound by the terms of this Agreement, whether or not the stated presales threshold has been met. In the event that Seller does elect to proceed without having met the threshold, Buyer will have no right to object thereto and shall remain bound by the terms of this Agreement.

This Section shall not delay the effectiveness of this Agreement, which shall be immediate, but rather, shall be deemed a "condition subsequent" to this Agreement. In the event of Seller's termination of this Agreement pursuant to this section, upon such termination and the return of Buyer's deposits, Seller and Buyer will be fully relieved and released from all obligations and liabilities under and in connection with this Agreement. Seller agrees to use its good efforts to meet the foregoing pre-sale requirement and such requirement shall not operate to extend the two (2) year completion obligation set forth above.

Purchase Agreement ¶7. [DE# 10-3]

16

The plain language of ¶ 7 gives the Edge the unilateral ability to withdraw from the contract in the event the specified presale contingency is not met, while simultaneously limiting  Jankus' remedy to refund of his deposit monies in the event of such a cancellation of the contract by the developer.  That the buyer's recourse is limited to collection of his deposit monies in this eventuality is made clear by the concluding remark :

> In the event of Seller's termination of this Agreement pursuant to this section, upon termination and the return of Buyer's deposits, Seller and Buyer will be fully relieved and released from all obligations and liabilities under and in connection with this Agreement.

The "liabilities" of the Seller thus released would necessarily include its liability for specific performance or other damages. Hence, ¶ 7 eliminates and impliedly waives Jankus' right to specific performance and damages  in the event of the developer's unilateral withdrawal from the contract due to failure to meet the presale contingency. Because a  contractual obligation to complete the building  within two years is rendered illusory by this provision, this  sale is not exempt from the ILSA.  *See Samara Development Corp v Marlow*, 556 So.2d 1097 (Fla. 1990).

As the Guidelines explain:

> The contract must not allow for nonperformance by the seller at the seller's discretion.  Contracts that permit the seller to breach virtually at will are viewed as unenforceable  because the construction obligation is not an obligation in reality. Thus, for example, a clause that provides for a refund of the buyer's deposit if the seller is unable to close for reasons normally within the seller's control is not acceptable for use under this exemption.  Similarly, contracts that directly or indirectly waive  the buyer's right to specific  performance are treated as lacking a realistic obligation to construct.  HUD's position is not that a right to specific performance   must be expressed in the contract, but that any such right that purchasers have must not be negated.  For example, a contract that provides for a refund or damage action as the buyer's sole remedy would not be acceptable.

ILSA Guidelines, 61 Fed. Reg. at 13,603.

Therefore, under the ILSA, as construed by the Secretary,   The Edge was not obligated to complete construction of Jankus' condominium unit within two years of the sale date. Consequently,

its obligation to build within two years is illusory and it is not exempt from the ILSA under §1702(a)(2). *See e.g. Markowitz v Northeast Land Co.,* 906 F.2d 100 (3d Cir. 1990)(contract not exempt from coverage under ILSA where buyer's remedy for breach of two year completion commitment was limited to liquidated amount equal to deposit plus interest); *Aboujaoude v Poinciana Development Co. II,* 509 F. Supp. 2d 1266 (S.D. Fla. 2007)(language limiting buyer's remedy to return of deposit money eliminates buyer's ability to enforce promise to construct the building within two years); *Schatz v Jockey Club Phase III, Ltd,* 604 F. Supp. 537 (S.D. Fla. 1985)(same).

### c.  Operation of Savings Clause

As a fall back position, the Edge argues that the "savings clause" set forth at ¶26 of the Agreement cures the otherwise illusory nature of the two year completion provision found at ¶7 of the Agreement.  This "savings clause" provides:

> The following sentence will supersede and take precedence over anything else in this Agreement, which is in conflict with it:
>
> If any provisions serve to: (1) limit or qualify Seller's substantial completion obligations as stated in Section 7, or (2) limit Buyer's remedies in the event that such obligations are breached, or (3) grant Seller an impermissible grace period, and such limitations or qualifications are not permitted if the exemption of this sale from the Interstate Land Sales Full Disclosure Act pursuant to 15 U.S.C. 1702(a)(2) is to apply or this Agreement is to be fully enforceable, then all those provisions are hereby stricken and made null and void as if never part of this Agreement.  For purpose of this paragraph only, the words "this Agreement" include in their meaning the Condominium Documents."

However, this provision does not cure the illusory nature of the developer's two year obligation of construction.  The "provisions" which impermissibly limit or qualify the two year completion obligation are all found in Paragraph 7 itself.  Striking paragraph 7 would leave no time obligation at all, which clearly would not satisfy the § 1702(a)(2) exemption.

In other words, if the developer seeks to invoke the savings clause to cure the illusory

obligation created by paragraph 7, then the entire  paragraph,  not portions of the paragraph, must

be stricken, thus eliminating the developer's two year construction deadline entirely. Without  any

other provision of the contract obligating it  to complete construction within two years, The Edge

has no basis  for invoking the § 1702(a)(2)  exemption.

A court is not allowed to re-write an agreement or to strike just some portion of a provision

where the offending sentences are interdependent with the remaining  portions of the agreement.

*Place at Vero Beach, Inc. v Hanson,* 953 So.2d 773 (Fla. 4th DCA 2007).  Like the agreement in

*Place at Vero Beach*, the pertinent portion of Paragraph 26 only permits provisions, not portions of

provisions, to be severed.  Thus, the court finds that the savings or severability clause of paragraph

26 does not render the Agreement exempt from the reporting and disclosure requirements of the

ISLA. *See Van Hook, supra*  (rejecting severability under saving clause in face of  failure to comply

with requirements of exemption under § 1702(a)(2)).

### d. "Bona Fide Land Sales Business" or "Sales to Builder" Exemptions

Alternatively,  The Edge asserts that Jankus is "potentially" a real estate investor such that

this transaction may fall within the statutory exemption set forth at 15 U.S.C. § 1702(a)(7).

Section 1702(a)(7) exempts "the sale or lease of lots to any person who acquires such lots

for the purpose of engaging in the business of constructing residential, commercial or industrial

buildings or for the purpose of resale or lease of such lots  to persons engaged in such business."

Related  regulations similarly exempt the sale of lots to persons "engaged in a bona fide land sales

business." *See*  24 C.F.R. §1710.14(a)(3).

The ILSA Guidelines further elaborate on the exemption at issue:

Lots Sold to Developers-

The sale or lease of lots to a person who is engaged in a *bona fide* land sales business
is exempt.  For a transaction to qualify  for this exemption, the purchaser must be a

person who plans to subsequently sell or lease the lot(s) in the normal course of business. The term "business" refers to an activity of some continuity, regularity, and permanency or means of livelihood. The sale or lease of lots to an individual who is buying the property for investment (to be sole at some unforeseeable time in the future) would not be exempt under this provision.

44 Fed. Reg. 24,018 (1979).

In his affidavit filed in support of summary judgment, Jankus avers that he has only closed on two pieces of real estate in the last nine years; that he currently lives in one of those homes; and that the Edge Condominium purchase is the third real estate transaction in which he signed a purchase and sale agreement in the last nine years. [DE# 21-3]. This negates the notion that Jankus is in the "land sales business" as that concept is defined in the statute. The Edge offers no evidence to contradict Jankus' testimony on this point, or to otherwise suggest an investment intent or purpose on the part of Jankus that might support the conclusion that he is in the land sales business.

As The Edge thus fails to raise a genuine issue of material fact on an element essential to its assertion of this exemption, summary judgment is appropriately entered against it on this affirmative defense. *See generally Johnson v Board of Regents of University of Georgia,* 263 F.3d 1234 (11th Cir. 2001)(court is required to enter summary judgment against party who fails to make showing sufficient to establish existence of element essential to that party's case and on which that party will bear burden of proof at trial*); N & C Properties v Pritchard*, 525 So.2d 1346 (Ala. 1988)(entering summary judgment for buyer where seller failed to adduce any evidence that investors purchased condominiums with intent to resell them to developers), *cert. den*. 488 U.S. 856 (1988); *Hamptons Development Corp of Dade v Sackler*, 522 So.2d 1035 (Fla. 3d DCA 1988)(affirming summary judgment for buyer where there "is not the slightest evidence" to support assertion that buyer was in land sales business).

### e.  Conclusion

Based on the foregoing, the Court concludes that the Agreement is not exempt from the ILSA, that plaintiff's complaint was timely filed,  and that  Jankus is  entitled to partial summary judgment on the merits of his §1703 (c) ILSA  claim,  entitling him to rescission of the Agreement, refund of his deposit monies or other damages as demanded at  Count 1  of his Second Amended Complaint.

### B.  Breach of Contract Claim

In order to prevail on his state law breach of contract claim, Jankus must show that this unit was not "substantially completed" until after July 6, 2007 (more than two years after he signed the contract).  On the record presented,  the court finds genuine issues of material fact pertaining to whether  The Edge achieved "substantial completion" within the prescribed time frame, and accordingly shall deny the parties' cross motions for summary judgment on this claim.

### C.  FDUTPA Claim

Recognizing that a violation of FDUTPA may be based upon "any law, statue, rule regulation or ordinance which proscribes unfair methods of competition, or unfair, deceptive or unconscionable acts or practices," §501.203(3)c), Fla. Stat. (2008) and that the ILSA generally proscribes certain unfair and deceptive trade practices, the court concludes that the  ILSA violation established under Count 1 also establishes a *per se* FDUTPA violation.  Accordingly, the court shall enter a partial summary judgment in favor of  Jankus on the liability portion of this particular strand of his FDUTPA claim.

With respect to the remaining theories underpinning his FDUTPA claim, the court finds material issues of fact pertaining to the existence of a deceptive act or unfair practice, causation and damages which preclude entry of summary judgment on behalf of either party.  Accordingly, the

21

court shall deny the parties' cross motions for summary judgment on the remaining  prongs of the FDUPTA claim.

### III.  CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED:**

1.  The plaintiff's motion for summary judgment [DE# 21]  is  **GRANTED** with respect to the §1703(c) ILSA claim asserted at Count 1 of his complaint, and **GRANTED** with respect to the *per se* FDUTPA violation based on violation of the  ILSA violation as set forth at  Count 3 of the complaint.  The plaintiff's motion for summary judgment [DE#21] is otherwise **DENIED.**

2.  The defendant's motion for summary judgment [DE# 31]  is **DENIED.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 8th  day of April, 2009.

Daniel T. K. Hurley
United States District Judge

cc. All counsel

For updated court information, visit unofficial Web site at http://us.geocities.com/uscts